WINCH, The M. F.   See Case No. 4,485.

## Case No. 17,866.

**WINCHELL et al. v. JOHN HANCOCK MUT. LIFE INS. CO.**

[8 Ins. Law J. 651; 8 Reporter, 549.] [1]

Circuit Court, D. Massachusetts.   May Term, 1879.

LIFE INSURANCE—CONSTRUCTION OF POLICY—FORFEITURE—RIGHT TO PAID-UP INSURANCE.

[1. An endowment life policy provided that, after the payment of one annual premium, the insured might surrender the policy, and receive a paid-up policy for an amount proportioned to the premiums paid, and the policy should be void if any premium was not paid when due, subject to Acts Mass. 1861, c. 186, which continued policies in force in spite of a failure to pay any premium, provided notice of the claim

[1] [8 Reporter, 549, contains only a partial report.]

and proof of death of the assured were given within 90 days. *Held*, that a paid-up policy proportioned to the premiums paid could be obtained, though the original policy had been forfeited by failure to pay a premium.]

[2. Equity could not relieve against the failure to submit notice of the claim and proof of death within 90 days, as provided by the statute, so as to keep the original policy in force, though this failure resulted from ignorance of the existence of the policy.]

[3. The right of insured to a paid-up policy was a property right, which survived to his representatives.]

Bill in equity by Isabella H. Winchell, wife and administratrix of the estate of George I. Winchell,. deceased, and Harry Winchell, only child of said George, against John Hancock Mutual Life Insurance Company. The complainants alleged that said George I. Winchell obtained from the defendants a policy for $3,000 upon his life, for the benefit of his wife and children, a copy of which is annexed to the bill. It was dated June 17, 1866, and was what is known as a "ten-year endowment policy," that is to say, premiums were to be paid for ten successive years, after which nothing more was to be paid by the assured. The policy contained this clause: "At any time after one annual premium has been paid, as stipulated in this policy, it may be surrendered at the option of the assured; and he is entitled to receive, in lieu thereof, a paid-up or nonforfeiture policy for an amount pro rata of the annual premiums paid, to wit, for one-tenth of the amount insured by this policy, for each and every premium paid therein: provided expressly, and this policy is made, and it is accepted by the assured upon, the following express conditions, to wit: (2) That if the premium, or any premium note given therefor, or any part of either, shall not be paid to said company on or before the time specified for the payment of the same, this policy shall thereupon be forfeited and be null and void; this condition, however, being subject to the provisions of the 186th chapter of the acts of the legislature of Massachusetts, in the year 1861, entitled 'An act to regulate the forfeiture of policies of life insurance.' "

That statute continues in force all life policies for a time, reckoned according to their net value, notwithstanding a failure to pay the premium, provided that notice of the claim and proof of the death shall be submitted to the company within ninety days after the decease of the assured. The assured paid eight annual premiums, including that due June 17, 1873, after which time he paid nothing. He died December 17, 1877.

The bill alleged that the payments made upon the policy were sufficient, under the statute of Massachusetts referred to in the policy, to continue it in force until after the death of the assured. That Winchell was a man of little or no business knowledge or experience, and left his affairs in great confusion, and the plaintiffs were in ignorance of the existence of the policy, and the same was lost until on or about March 30, 1878, when they individually gave due notice and proof of the death of said Winchell to the defendant corporation, and demanded payment, which was refused; that. the delay was due to unavoidable accident, from which a court of equity will relieve the plaintiffs. After reciting the clause concerning the option to take a paid-up policy in proportion to the number of premiums which had been paid, the bill alleged that the plaintiffs had offered to deliver up the policy to the defendants, and had demanded of them a paid-up policy for $2,400, but the defendants had refused to give said policy, or to pay the amount thereof. It prayed, in the alternative, payment of the full amount of $3,000, or a delivery of a paid-up policy of $2,400, and payment of. that amount. The defendants demurred to the bill.

S. Wells and F. L. Hayes, for defendant.

(1) The plaintiffs have a complete and adequate remedy at law. Rev. St. § 723; Thompson v. Railroad Cos., 6 Wall. [73 U. S.] 134; Mossop v. Eadon, 16 Ves. 431.

(2) Equity will not relieve against a neglect to comply with the requisitions of a statute, and the ignorance of the plaintiffs is not an accident or mistake. Story, Eq. Jur. §§ 101, 105, and cases, and sections 1325, 1326.

(3) The paid-up policy could be demanded only while the assured had an "option;" that is, while his policy was in force without default on his part. Bussing's Ex'rs v. Union Mut. Life Ins. Co. (March, 1879) 8 Ins. Law J. 218. The cases cited by the plaintiffs are distinguished in this: that they were on policies which were nonforfeitable, and which had an acknowledged value after a failure to pay a premium.

(4) The right of surrender was a personal right, which could not be exercised after the death of the assured.

D. Foster and A. D. Foster, for the plaintiffs.

(1) A bill for the specific performance of a contract to write a policy will lie after a loss, as well as before. Brooklyn L. Ins. Co. v. Dutcher, 95 U. S. 269; Eames v. Home Ins. Co., 94 U. S. 621; Tayloe v. Merchants' Fire Ins. Co. of Baltimore, 9 How. [50 U. S.] 405.

(2) The option may be exercised "at any time," after one annual premium has been paid. If it ceased as soon as there was a neglect of payment, it would be void at the only time when it was for the benefit of the assured to demand it. A policy should be construed most strongly against the company. Dorr v. Phœnix Mut. L. Ins. Co., 67 Me. 438; Nat. Bank v. Insurance Co., 95 U. S. 678; Chase v. Phœnix Mut. Life Ins. Co., 67 Me. 85; New York Life Ins. Co. v. Statham, 93 U. S. 30; Montgomery v. Phœnix Ins. Co., 6 Reporter, 362.

LOWELL, Circuit Judge. Equity will not relieve against a penalty or forfeiture imposed

by statute, because it is presumed that the legislature would have inserted in an act any exceptions or mitigations which it intended to admit. A fortiori, when a new right is conferred by statute, and certain acts to be done within a certain time are made conditions precedent to the recovery, equity might perhaps even then relieve against a delay caused by the positive fraud of the defendant; but nothing short of that would avail. The plaintiffs admit this general rule, and distinguish this case by the fact that the statute is incorporated into the contract, and so becomes a right by stipulation. I do not think the policy intends any more in this respect than to remind the assured that he has the rights given him by the statute, and, indeed, I understand one of the statutes to require such a reference to be inserted in the policy. The plaintiffs, therefore, having failed to notify the loss until about one hundred days after it occurred, cannot be relieved on the ground of their ignorance of the existence of the policy.

The construction of the clause of the contract which gives the assured an option to take a paid-up policy at any time after one annual premium has been paid, coupled with the other clause that the policy shall be void if any premium is not paid when due, saving as the forfeiture is restricted by the Massachusetts statute, is a nice and difficult one. The defendants, in support of their demurrer, maintain that the two clauses, taken together, mean that the option must be exercised before there has been a forfeiture; that is to say, during some current year for which payment has been made, and before or on the day the annual premium is payable. The option, they argue, means a choice between the original and the paid-up policy, and there can be no choice between a forfeited policy and some other. The case of Bussing's Ex'rs v. Union Mut. Life Ins. Co. [supra], is an authority for this construction, which seems to reconcile the apparent discrepancies in the two clauses, and to be consistent with all the words used. On the other hand, the plaintiffs insist that the policy is nonforfeitable after one annual premium has been paid, and that the assured may choose between the temporary extension of the policy under the Massachusetts law, or a paid-up policy for a less amount. They further say that the word "option" may be disregarded, or be read as meaning "right"; that is, the assured has the right, at any time after paying one or more annual premiums, to take a paid-up policy for an amount proportioned to the premiums paid.

After much doubt, I have concluded that the plaintiffs' construction is the more obvious and natural one. I think the assured, in reading his policy, would suppose that he need give himself no uneasiness about the premiums, for that he could always be sure of a policy as large as those he had paid would warrant. That was my impression on first reading the policy, and I think, when that

is the case, the other construction should be clear and decisive on a more careful consideration, before a court should venture to adopt it. The policy itself, as a policy for $3,000, was forfeited by neglect to pay the premium, except as it was kept in force until the death of the assured by virtue of the statute of Massachusetts; and that policy could not be revived or reinstated except by the consent of both parties. But it is not wholly inconsistent with that condition to hold that the right to a paid-up policy of less amount remained good. Such was the decision upon those words in two cases cited by the plaintiffs, which I agree are not otherwise specially like the present.

The defendants would import into the contract the words often found in such policies, that the paid-up policy must be applied for while the original policy is in force. The plaintiffs say that the very omission of those words is evidence that such is not the intent. I do not consider that form of expression to have become so universal that the court can supply it by implication, nor, on the other hand, that the omission has much bearing on the case. Nor do I consider that the words "at any time after" one premium has been paid refer to the present question at all. The meaning is the same as if "after" or "when" had been used, and points to a terminus a quo, to the beginning of the right, and not to its termination. But I do consider that one fair and reasonable, and, on the whole, the fairest, construction of the contract is that the forfeiture by nonpayment is of all rights not otherwise provided for. Even if we supplied the words, "while the policy is in force," this policy was in full force for the whole amount when the assured died. It was in force, in all respects, and to all intents and purposes, and subject to be forfeited, if the assured did any act prohibited by the conditions, such as traveling in certain countries, or engaging in certain occupations. In other words, up to this time it was not forfeited at all, except as to the right of extending it beyond the time to which the statute extended it. Why, then, should not the assured have the option to exchange it for a paid-up policy? If the assured had this right at the time of his death, the plaintiffs have it, because there was nothing of a personal character to die with the person. It was a right of property, which they would take, or, at least, which the administratrix would take, like other rights of that character.

I am inclined to think an action at law might at the present day be maintained on this claim; but, as the paid-up policy never was issued, and the defendants refused to issue it on demand, it seems to come directly within the cases cited by the plaintiffs, in which courts of equity have been held to have jurisdiction also; they having acquired it when courts of law were less liberal than now.

Demurrer overruled.